914 So.2d 612 (2005)
Cedric McGINNIS, Plaintiff-Appellant
v.
WASTE MANAGEMENT OF LOUISIANA, L.L.C., et al., Defendant-Appellee.
No. 40,330-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 2005.
Rehearing Denied December 8, 2005.
*613 Anthony J. Bruscato, Monroe, for Appellant.
Taylor, Wellons, Politz & Duhe, by Paula M. Wellons, Patricia H. Wilton, Charles H. Duhe, Jr., New Orleans, for Appellee.
Before WILLIAMS, PEATROSS and MOORE, JJ.
MOORE, J.
Cedric McGinnis appeals a judgment dismissing his personal injury action against Waste Management of Louisiana, L.L.C., its general liability insurer and one of its employees, Edward Bryant. The district court found that McGinnis's exclusive remedy is in workers' compensation. We affirm.

Factual Background
Waste Management is a provider of solid waste collection services. In April 1999, it signed a "temporary personnel supply agreement" with Labor Finders of Monroe, a temporary employment agency, for Labor Finders to provide personnel to Waste Management. The agreement provided that no personnel supplied by Labor Finders shall be employees of Waste Management. The agreement further provided that Labor Finders was an independent contractor vis-à-vis Waste Management and responsible for maintaining workers' compensation insurance for its own personnel. Labor Finders paid its workers' salaries according to a weekly time sheet provided by Waste Management. The agreement did not specify the type of work that temporary workers would be performing for Waste Management.
Waste Management employed Edward Bryant, who is McGinnis's uncle, as a garbage truck driver in Ouachita Parish; Bryant was not employed by Labor Finders. In April 2003, Bryant was shorthanded on his route so he asked McGinnis to join the crew, instructing him to apply for a job at Labor Finders. McGinnis did so and was accepted; Labor Finders sent him to work for Bryant at Waste Management as a Labor Finders employee.
On the morning of June 20, 2003, Bryant and McGinnis were collecting garbage on Rowland Road in Ouachita Parish when Bryant, who was driving, backed up *614 the truck into the front end of a Ford Mustang that was waiting behind the truck. McGinnis was unable to escape his position before the crash; his right leg was pinned between the car and the truck. McGinnis's knee actually smashed out one of the Mustang's headlights. He was taken to North Monroe Hospital and treated for serious injuries.
McGinnis filed the instant suit against Bryant, Waste Management and its commercial general liability carrier, ACE American Insurance Company, in the Fourth Judicial District Court.[1] McGinnis alleged that Bryant was negligent in driving the truck and causing the collision; Waste Management was liable under the doctrine of respondeat superior; and ACE was liable under its policy for Bryant's actions.
The defendants answered that McGinnis's exclusive remedy against them was in workers' compensation; by amended answer, they alleged that Waste Management was his statutory employer. Later, they moved for summary judgment, urging the "borrowed employee" doctrine, Griffin v. Wickes Lumber Co., XXXX-XXXX (La.App. 1 Cir. 12/20/02), 840 So.2d 591, writ denied, XXXX-XXXX (La.9/19/03), 853 So.2d 640, and Waste Management's statutory employer status, La. R.S. 23:1061 A(2), Maddox v. Superior Steel, XXXX-XXXX (La.App. 1 Cir. 9/28/01), 814 So.2d 569. In support, they attached the affidavit of Danny Parker, a supervisor with Waste Management. He averred:
 McGinnis was employed by Labor Finders and was performing work as a garbage collector for Waste Management pursuant to their contract;
 Parker was McGinnis's supervisor on the job;
 Labor Finders had no supervisor for McGinnis at Waste Management or on the garbage truck;
 Labor Finders was responsible for paying McGinnis according to his hours worked at Waste Management;
 Waste Management had the right to discontinue using McGinnis as a worker, at its sole discretion; and
 Waste Management provided the tools and equipment for McGinnis to use while performing his duties.
The defendants also attached a copy of Waste Management's agreement with Labor Finders, and a portion of ACE's insurance policy, excluding coverage for any obligation that the insured might be held liable for in workers' compensation. The defendants did not attach a copy of any contract between Waste Management and any third party. Additionally, at the hearing on the motion, they offered without objection a copy of McGinnis's deposition. McGinnis confirmed that Waste Management provided him with gloves and a safety jacket, the only special equipment he needed for his job; that he had a time clock which he used at Waste Management, and Labor Finders paid him according to that clock; and that Waste Management had the authority to fire him, although he was later terminated by Labor Finders for reasons unrelated to this incident.
McGinnis filed an opposition, urging chiefly that Waste Management did not satisfy every element of a "principal" under La. R.S. 23:1061 A(1), and did not meet every jurisprudential factor for finding *615 a borrowed employee, Cavalier v. Cain's Hydrostatic Testing Inc., 93-1214 (La.App. 1 Cir. 5/20/94), 637 So.2d 724, aff'd, 94-1496 (La.6/30/95), 657 So.2d 975.[2] McGinnis attached no affidavits or other summary judgment evidence.
After hearing argument and taking the matter under advisement, the district court granted summary judgment. In reasons for judgment, the court found that McGinnis was a borrowed employee of Waste Management and thus limited to the exclusive remedy of workers' compensation. McGinnis has appealed.

Discussion
The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Brown v. International Paper Co., 38,892 (La.App. 2 Cir. 9/22/04), 882 So.2d 1228, writ denied, 2004-2865 (La.1/28/05), 893 So.2d 78. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Racine v. Moon's Towing, 2001-2837 (La.5/14/02), 817 So.2d 21. The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. Appellate review of the grant or denial of summary judgment is de novo. Jones v. Estate of Santiago, XXXX-XXXX (La.4/14/04), 870 So.2d 1002.
Except for intentional acts, workers' compensation is the exclusive remedy for work-related injuries and illnesses. La. R.S. 23:1032; Kelly v. CNA Ins. Co., 98-0454 (La.3/12/99), 729 So.2d 1033. When a defendant invokes the immunity of a statutory employer under R.S. 23:1032, it has the burden of proving this immunity. Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262. The statute is strictly construed against the party claiming the immunity. Morgan v. ABC Manufacturer, 97-0956 (La.5/1/98), 710 So.2d 1077.
In some circumstances, an employer may be the statutory employer of a worker that it does not directly employ. La. R.S. 23:1061 provides, in pertinent part (with emphasis added):
A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032[.]
McGinnis correctly shows that the defendants offered no contract between Waste Management and any third party in support of the motion for summary judgment. Although Waste Management presumably has a contract to pick up garbage in Ouachita Parish, no such contract has been proved, and this deficiency defeats the finding of statutory employer status. Jones v. Airport Systems Int'l, 27,278 (La.App. 2 Cir. 4/3/96), 671 So.2d 1176. The evidence is therefore insufficient to support *616 summary judgment under La. R.S. 23:1061.
Although the statutory employer rule does not apply, we find that the "special employer" rule governs this situation. Special employer status is distinguished from that of a statutory employer. Griffin v. Wickes Lumber Co., supra. The concept is defined, in pertinent part, by La. R.S. 23:1031:
C. In the case of any employee whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. * * * The special and general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.
As one commentator has explained,
An individual may be the "general" employee of one employer and a "special" employee of another. The general employer is also referred to as the "lending" employer and the special employer is called the "borrowing" employer. The simplest example of this relationship is the labor pool (general employer) that hires out the labor pool employees to a special employer who will assume the control of the labor pool personnel in the performance of a particular task.
Denis Paul Juge, Louisiana Workers' Compensation, § 7.4 (2d ed.2002) (citations omitted).
In Vaughn v. BFI Waste Systems of North Amer., XXXX-XXXX (La.App. 4 Cir. 7/25/01), 793 So.2d 410, a case factually similar to the instant case, the court listed factors relevant to the finding of special employer status under R.S. 23:1031 C:
(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation; (2) whose work is being performed; (3) was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer; (4) did the employee acquiesce in the new work situation; (5) did the original employer terminate his relationship with the employee; (6) who furnished the tools and place for performance; (7) was the new employment over a considerable length of time; (8) who had the right to discharge the employee; and (9) who had the obligation to pay the employee.
See also Clarendon Nat'l Ins. Co. v. Jeansonne & Remondet L.L.C., 37,765 (La.App. 2 Cir. 10/23/03), 859 So.2d 877, writ denied, XXXX-XXXX (La.3/12/04), 869 So.2d 826.
We have performed a de novo review of the relevant facts. Waste Management had direct control over McGinnis's work; his immediate supervisor was his uncle, a general employee of Waste Management. McGinnis was performing the work of Waste Management when he was injured. Waste Management's agreement with Labor Finders was that McGinnis or other similarly situated personnel would not be considered the employees of Waste Management. McGinnis agreed to the work situation, in fact seeking out the work on his uncle's crew. The general employer, Labor Finders, was in the business of providing labor and McGinnis remained its general employee. Waste Management furnished the garbage truck, driver, other crew, and all related equipment for the job. The new or "special" employment *617 was the intent of McGinnis in going to work for Labor Finders, and lasted for three months prior to the accident. The right to discharge McGinnis lay with both employers, but Waste Management could refuse to retain any personnel sent by Labor Finders with eight hours' notice. Finally, Labor Finders has the obligation to pay McGinnis but did so only upon receipt of a time sheet from Waste Management.
Admittedly, Waste Management's agreement with Labor Finders provides that "no personnel shall be actual employees of the company." Nonetheless, this provision does not negate the "special employer" status of Waste Management under R.S. 23:1031 C. In fact, the agreement appears to be precisely the type of situation contemplated by the statute  that of a worker employed by, and under the control and direction of, the special employer at the time of his injury.[3] As a matter of law, both Labor Finders and Waste Management are entitled to the tort immunity of R.S. 23:1032.
McGinnis further argues that even if Waste Management is entitled to tort immunity, its employee and insurer are not. This argument lacks merit. Waste Management was the general employer of Bryant and its immunity extends to him by virtue of R.S. 23:1032 A(1)(b):
This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any * * * employee of such employer or principal under any dual capacity theory or doctrine.
The liability of ACE is governed by its policy covering Waste Management. McGinnis argues that the policy is ambiguous in that the body of the policy would seem to cover torts committed by Bryant, who is an "insured" under the policy, while an endorsement for "fellow employee coverage" would seem to exclude it. This alleged ambiguity, however, is unavailing to McGinnis. ACE's liability arises only if Waste Management is legally obligated to pay damages to McGinnis. Because of the immunity of R.S. 23:1032, Waste Management is not so obligated. Moreover, ACE's policy § B 3 clearly excludes "any obligation for which the `insured' or the `insured's' insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law." In short, ACE's policy does not cover this type of claim.

Conclusion
For the reasons expressed, we affirm the judgment of the district court. Costs are to be paid by the plaintiff, Cedric McGinnis.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, PEATROSS, DREW, and MOORE, JJ.
Rehearing denied.
NOTES
[1] McGinnis originally called the insurer Pacific Employers Insurance Company; the defendants showed that the CGL carrier was actually ACE American Ins. Co. McGinnis later amended his petition to join ACE as an "additional insured," but on appeal urges only that ACE, not Pacific, should be liable for his injuries.
[2] Cavalier has been superseded on other grounds by a 1996 amendment to La. C.C. art. 2323. Keith v. U.S. Fidelity & Guar. Co., 96-2075 (La.5/9/97), 694 So.2d 180.
[3] Analogously, many claimants are found to be employees despite agreements declaring them to be "independent contractors" or "agents." Fontenot v. J.K. Richard Trucking, 97-220 (La.App. 3 Cir. 6/4/97), 696 So.2d 176; Rush v. Employers Nat'l Ins. Co., 598 So.2d 603 (La.App. 4 Cir.), writ denied, 605 So.2d 1364 (La.1992); Fuller v. U.S. Aircraft Ins. Group, 530 So.2d 1282 (La.App. 2 Cir.), writ denied, 534 So.2d 444 (La.1988), cert. denied, 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989); Sones v. Mutual of Omaha Ins. Co., 272 So.2d 739 (La.App. 2 Cir.), writ denied, 273 So.2d 292 (La.1973).