DREW, J.
 

 j i Shawn Blackledge allegedly injured his back and legs in a fall on August 1, 2008, while working for Sol’s Pipe and Steel, Inc. (“Sol’s”), as part of an inmate work-release program. At the time, Blackledge was living in a halfway house.
 

 He was unable to move his legs and confined to a wheelchair for several days. He returned to light-duty work on August 28, 2008. His employment with Sol’s ended on November 19, 2008, in accordance with work-release policies. Ten days later, he was released from Richwood Correctional Facility in Monroe.
 

 Blackledge filed a disputed claim for compensation seeking benefits for the four weeks that he was unable to work. Sol’s filed a motion for summary judgment on the grounds that under La. R.S. 23:1201.4 Blackledge had-forfeited any compensation benefits while incarcerated. Four days before the date fixed for the hearing on the motion for summary judgment, Black-ledge filed a motion to stay in the workers’ compensation proceeding, and a petition
 
 *566
 
 for declaratory judgment in district court seeking to have La. R.S. 23:1201.4 declared unconstitutional. The district court found the statute to be constitutional, and dismissed Blackledge’s petition. He now appeals.
 

 Sol’s has answered the appeal and filed a motion for sanctions for what it terms a frivolous appeal. ■
 

 The Statute in Question
 

 La. R.S. 23:1201.4 provides:
 

 |2The employee’s right to compensation benefits,, including, medical expenses, is forfeited during any period of incarceration, unless a workers’ compensation judge finds that an employee has dependents who rely on a compensation award for their support, in which case said compensation shall be made payable and transmitted to the legal guardian of the minor dependent or other person designated by the workers’ compensation judge and such payments shall be considered as having been made to the employee. After release from incarceration, the employee’s right to claim compensation benefits shall resume. An employee who is incarcerated but is later found to be not guilty of felony criminal charges or against whom all felony charges have been dismissed by the prosecutor shall have the prescriptive period for filing a claim for benefits under this Chapter extended by the number of days he was incarcerated.
 

 Equal Protection Claim under Art. I, § 3 of the Louisiana Constitution
 

 Our state constitution requires equal application of the law in similar circumstances. The statute creates, however, a system where work-release employees are treated differently from other employees:
 

 Plaintiff alleges that the statute in question is not substantially related to any legitimate government interest.
 

 Sol’s argues that this policy prevents a prisoner from receiving a financial windfall during a time when he is housed and fed by the government. Further, the prisoner’s inability to claim workers’ ^compensation from a prospective work-release employer is an inducement for that employer to take a chance on hiring a prisoner.
 

 Part of the rationale behind this statute is that workers’ compensation benefits are a partial replacement of wages that a worker would otherwise be able to earn, but an incarcerated individual is not in a position to earn wages. In
 
 Jowers v. Liberty Const. Co.,
 
 32,068 (La.App.2d Cir.6/16/99), 740 So.2d 735, the WCJ concluded that the statute did not apply to a person who is incarcerated while awaiting trial. This court reversed, concluding that the claimant was not capable of earning wages while being detained, and an award of benefits would allow him to receive additional benefits while his basic needs were already being met by the state. Black-ledge was obviously able to earn wages despite being incarcerated.
 

 In
 
 White v. BHB Oil,
 
 45,173 (La.App.2d Cir.4/14/10), 34 So.3d 1115,
 
 writ denied,
 
 2010-1042 (La.9/3/10), 44 So.3d 690, the claimant, an inmate at Caddo Correctional Center, was injured while working in a work-release program. In ruling that the claimant had forfeited his benefits while incarcerated, this court noted that the purpose of the statute was not to punish an injured worker for being incarcerated, but to recognize that the state provides for an inmate’s needs. This court noted that the workers’ compensation laws are designed to prevent an employee from contemporaneously collecting duplicative wage-loss benefits.
 

 
 *567
 
 Blaekledge unsuccessfully seeks to distinguish his. situation from
 
 White, supra,
 
 arguing that during the time frame in question, he did not return to a correctional facility at the end of each work day, but instead returned to a halfway house. We find this to be a distinction without a 14difference. We find that Blaekledge was still incarcerated, even though extended the privilege of occupancy in a halfway house.
 

 Blaekledge argues that his wages, not state funds, paid for his own needs.
 

 By the very terms of the Work-Release Program statute, La. R.S. 15:711, Black-ledge was responsible for the cost of his room, board, clothing, and other necessary expenses incident to his employment. Blackledge’s wages were collected by the sheriff and used to pay his expenses. Any balance left over was to be given to Black-ledge upon his discharge. Blaekledge in fact earned $21,000 working for Sol’s, and $18,000 of that was retained by the sheriff. This statistic does nothing to disturb our view of the statute’s constitutionality.
 

 The state has an interest in prisoners being successfully integrated back into society and becoming positive citizens.
 
 See United States v. Knights,
 
 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001);
 
 Samson v. California,
 
 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). A work-release program, which is one point on a continuum of possible punishments, helps promote that interest.
 

 Due Process Claim under Art. I, § 22 of the Louisiana Constitution
 

 Blaekledge further claims that La. R.S. 23:1201.4 violates his due process rights under Article I, § 22 of the Louisiana Constitution, in that it bears no real and substantial relationship to an appropriate governmental objective.
 

 We disagree. If nothing else, the statute encourages an employer to hire a convict, which increases the odds for a successful reintegration into |fisociety. Avoiding duplicative payments to prisoners and generally keeping down unnecessary, workers’ compensation costs-are also worthy goals of a just society.
 

 Plaintiff’s Lack of Evidence
 

 Blaekledge offered no evidence at the hearing on his petition- for declaratory judgment.. The items attached to Sol’s opposition to the petition are the only evidence in the appellate record. These items established the date of injury and the fact that Blaekledge was incarcerated during the period of alleged disability.-
 

 There is no evidence in the appellate record establishing: (1) that Blaekledge lived in a halfway house at the time of the accident; (2) what he earned while working for Sol’s; (3) how much of his wages were retained by the sheriff; or (4) the nature of his job duties after he returned to work.
 

 Blackledge’s showing is inadequate, and on this showing, we have no basis to overrule the ruling of the trial court.
 

 Constitutionality of La. R.S. 23:1201.4
 

 Our reading of the cases proffered by plaintiff provide no appreciable support for his argument that the statute is unconstitutional on its face. As noted by the trial court, Blaekledge has not attacked the constitutionality of the statute as it applies to a particular individual, a somewhat lighter, but still difficult, burden.
 

 A statute is presumed constitutional until held otherwise. An attack on the general, constitutionality of a statute requires the plaintiff to establish that no set of circumstances exist under which the statute would be valid. This burden has clearly not been met.
 

 
 *568
 
 | (¡Plaintiff has misread the statute. It does not say that a worker is never entitled to compensation benefits if injured while in jail. It says that benefits are forfeited during a period of incarceration if a WCJ finds that the employee has no dependents who rely on a compensation award for their support.
 

 The statute does not violate the equal protection clause because it furthers an appropriate state interest. First, it prevents a windfall for prisoners whose upkeep is paid for by the state. Second, it fosters the goal of prisoner rehabilitation by giving an incentive to employers to participate in the work-release program while knowing that the state will pay for medical care and upkeep in the event of a work-related injury. Third, Louisiana has an interest in minimizing the costs of the workers’ compensation program.
 

 The statute does not violate the due process clause because it bears a rational relationship to a legitimate governmental interest which has been recognized by this court. The goal of the statute is not to punish an injured worker for being incarcerated, but to prevent him from receiving a windfall. A general principle underlying the wage-loss benefit coordination laws is to preclude the collection of duplicative wage-loss benefits.
 
 See Jow-ers, supra.
 

 Even if Blackledge’s status as a halfway house resident was established for the record, this does not change the result. Even when an inmate is in a work-release program, he is still relieved of the burden of upkeep and maintenance. In addition, an inmate living in a halfway house is still considered incarcerated for purposes of La. R.S. 23:1201.4. In
 
 Jackson v. Johnson,
 
 475 F.3d 261 (5th Cir.2007), the federal Fifth Circuit concluded |7that halfway house detention was equivalent to incarceration or confinement for purposes of the Prison Litigation Reform Act.
 

 Damages, Attorney’s Fees, and Sanctions
 

 Damages and attorney’s fees for a frivolous appeal can be awarded when one of three grounds can be shown: (1) the appeal does not present a substantial legal question; (2) the obvious purpose of the appeal is solely to delay the action; or (3) appellate counsel does not seriously believe the view that he has advocated.
 

 We do not find that any of these three preconditions exist here. Accordingly, we decline to assess any damages, attorney’s fees, or sanctions.
 

 DECREE
 

 At plaintiffs cost, the ruling of the trial court is AFFIRMED.